```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF MISSISSIPPI
                           JACKSON DIVISION


UNITED STATES OF AMERICA

        vs.              Criminal Action No. 3:09cr00012-HTW-JCS

STEVEN CHRISTOPHER



              COURT REPORTER'S TRANSCRIPT OF HEARING


                    BEFORE HONORABLE JAMES SUMNER
                    UNITED STATES MAGISTRATE JUDGE

                           January 22, 2009
                          Jackson, Mississippi



APPEARANCES:

David H. Fulcher
Assistant United States Attorney
Jackson, MS

     Representing the Government,
     United States of America


Omodare B. Jupiter
Federal Public Defender
Jackson, MS

     Representing the Defendant,
     Steven Christopher
```

```
 1   (JANUARY 22, 2009)
 2          THE COURT:  It's United States v. Steven Joseph
 3   Christopher.  We're here for -- is it a preliminary hearing as
 4   well?  Is that correct?
 5          MR. FULCHER:  Yes, Your Honor.
 6          THE COURT:  All right.  Detention and preliminary
 7   hearing.  Everyone who is going to give any testimony in this
 8   cause, if you would, please, stand, raise your right hand and
 9   take the oath.
10       (WHEREUPON THE OATH WAS ADMINISTERED)
11          THE COURT:  Any objection to both these witnesses
12   staying in the room?
13          MR. JUPITER:  No, Your Honor.
14          THE COURT:  All right, then.  First witness for the
15   United States or a proffer, if you prefer.
16          MR. FULCHER:  Your Honor, we would call Special Agent
17   Kelly Adcox, United States Secret Service.  We would proffer
18   the affidavit that she filed as part of the criminal complaint
19   as her direct testimony.  I do have one or two other things,
20   additional questions to ask beyond that, if I could.
21          THE COURT:  All right.  Ms. Adcox, would you state
22   your full name and your occupation, please.
23          THE WITNESS:  Kelly Adcox, A-D-C-O-X, Special Agent,
24   United States Secret Service.
25          THE COURT:  All right.  Direct examination.
```

```
 1              MR. FULCHER:  Thank you, Your Honor.
 2                        DIRECT EXAMINATION
 3    BY MR. FULCHER:
 4    Q    Special Agent Adcox, if you could, tell the court, have you
 5    had an occasion to view videos on YouTube concerning the
 6    defendant here, Steven Christopher?
 7    A    Yes, I have.
 8    Q    And if you could, first of all, tell -- just state for the
 9    record, have you identified, based on your viewing of these
10    videos and your seeing the person that is on those videos, have
11    you been able to positively identify whether or not that person
12    is the defendant?
13    A    Yes, it is the defendant.
14    Q    And do you see him in court today?
15    A    Yes.  He's right there (indicating).
16    Q    If you could identify him for the record.
17    A    He's the defendant over at the table in the orange
18    jumpsuit.
19              THE COURT:  Let the record reflect she's identified
20    the defendant in this case.
21    BY MR. FULCHER:
22    Q    And if you could then, briefly tell the court with regard
23    to threats that were made by the defendant against the then
24    President Elect, now President Barack Obama, what, if anything,
25    the defendant said on those YouTube videos that you viewed.
```

1    A   On specifically one of the videos I viewed, the defendant
2    made claims on that video that he had made threats in the past
3    against then President Elect Obama, who is now the current
4    President.  He also stated he made other threats and that it
5    was okay for him to make threats; he would be able to continue
6    making those threats.
7    Q   Okay.  And you mentioned one specifically.  Is that the --
8    does that video have a particular title?
9    A   Yes.  It's called "The Truth."
10   Q   Okay.
11            MR. FULCHER:  Your Honor, again, proffering the
12   affidavit of the agent as her direct testimony, we would tender
13   the witness.
14            THE COURT:  All right.  Cross-examination.
15            MR. JUPITER:  Beg the court's indulgence.
16            THE COURT:  Certainly.
17       (SHORT PAUSE)
18                          CROSS-EXAMINATION
19   BY MR. JUPITER:
20   Q   Good afternoon, Agent Adcox.
21   A   Good afternoon.
22   Q   I don't know if we've had the pleasure before.  My name is
23   Omodare Jupiter.  I represent Steven Christopher.  Now, you
24   mentioned that you viewed this matter -- viewed this video on
25   YouTube.  Correct?

1  A    Yes, sir.
2  Q    Okay.  You didn't receive any written documents on paper
3  that were mailed by Mr. Christopher, did you?
4  A    Not by the mail, no.
5  Q    Okay.  Everything you viewed has been on either YouTube or
6  on a Web site that you would consider to be a threat against
7  the President Elect or President of the United States.
8  Correct?
9  A    Yes, sir.
10 Q    All right.  And you -- how many -- how many of these videos
11 have you viewed?
12 A    I viewed approximately 20 of the videos or parts of them.
13 Q    And all of these video -- were all of these videos from a
14 Web site known as Stevie the Playboy?
15 A    No.  They are -- he has several different YouTube accounts.
16 Q    Okay.  The particular video that you referenced called "The
17 Truth," this particular video was -- was one in a series of
18 videos he put out.  Correct?
19 A    I don't know.
20 Q    Okay.  Did you view prior videos where Mr. Christopher was
21 indicating he was trying to get people's attention to move to
22 Florida?
23 A    The only time I've seen about Florida is on the YouTube I
24 saw when he was leaving the courtroom on Friday.  That's the
25 only time I've seen Florida mentioned.

```
 1   Q    Okay.  You said you viewed about 20 videos, though?
 2   A    That's correct.
 3   Q    All right.  Do they all have a -- have a -- how many of
 4   those where he has communicated a threat against the President?
 5   A    That is the only one that I recall seeing against the
 6   President or President Elect.
 7   Q    Did you watch that entire video?
 8   A    No, I did not.
 9   Q    Okay.  And in that video, does he reference -- does he talk
10   about why God punishes people?
11   A    In the beginning of it, yes, he does.
12   Q    Okay.  Does he -- does he say that -- does he reference
13   himself as using the same type of tactics as God?
14   A    I don't recall.
15   Q    Okay.  In what context did he say that he was making these
16   so-called threats?  What was -- in this -- how long is this
17   video?
18   A    It's I believe over seven minutes.
19   Q    Okay.  How much of it did you view?
20   A    I quit watching after he confirmed the threats.
21   Q    Okay.  What particular words did he use?
22   A    That, "I have made threats against President Elect Obama,
23   death threats."
24                          (INTERRUPTION)
25        THE COURT:  Who has got that?  Can you get to it?
```

```
 1          MR. JUPITER:  It certainly wasn't me, Your Honor.  I
 2  won't say who it was.
 3          THE COURT:  Not -- not -- Alex, no.
 4          MR. JUPITER:  Okay.
 5  BY MR. JUPITER:
 6  Q   Did he refer --
 7          THE COURT:  (Inaudible) can lift 500 pounds.  You
 8  couldn't get to that and turn it off?
 9       (LAUGHTER)
10          THE COURT:  All right.  I'm sorry, Mr. Jupiter.
11          MR. JUPITER:  Okay.
12  BY MR. JUPITER:
13  Q   Do you recall in the one and a half or two minutes of this
14  7-minute video that you watched him referring to things that he
15  says as bluffs?
16  A   I don't recall his specific words.  I wouldn't doubt if he
17  did say that.
18  Q   Okay.  Did he -- do you not recall him saying that he's
19  motivating people?
20  A   Yes, he did.  That was the word he was using; he was trying
21  to motivate people.
22  Q   Okay.  And did he indicate during throughout that video
23  that he was, in fact, not going to carry out any type of -- any
24  type of such threat?
25  A   I don't recall him saying those words.
```

1   Q   Okay.  Did he -- so you -- other than just hearing some
2   words about, "I have made threats against the President,"
3   that's the only part of the video that you can really recall
4   for this court.  Correct?
5   A   For this court, yes.
6   Q   All right.  And you don't -- you don't remember what he --
7   why he said why people need to go to Florida or what his
8   motivations in making these videos were?
9   A   No.
10  Q   Okay.  Did he indicate who his intended audience was?
11  A   That, I don't remember.
12  Q   Okay.  In the 20 -- in the 19 other videos that you've
13  watched, he spoke about all different types of things.  Is that
14  correct?
15  A   That is correct.
16  Q   A lot of spiritual, religious messages in those videos.
17  Correct?
18  A   Yes.
19  Q   All right.  And in none of those videos did he talk about
20  making a threat against the President of the United States?
21  A   Not that I recall.
22  Q   But you can't -- from that particular -- the particular
23  video that you saw, you didn't see any connection between that
24  video and the 19 other videos he -- he made that you saw?
25  A   Except for just the spiritual references, no.

1  Q    Okay.  So the main content in these 20 videos were
2  religious messages that he was conveying?
3  A    They were a variety.  Some had religious.  Some had
4  anti-Semitic views.  Some were just singing.  Some were singing
5  along with the radio.  Some were his own songs.
6  Q    Thank you.
7            THE COURT:  Any redirect?
8            MR. FULCHER:  No redirect, Your Honor.
9            THE COURT:  All right.  You may step down.
10      (WITNESS EXCUSED)
11           THE COURT:  Your next witness, please.
12           MR. FULCHER:  Your Honor, the -- the government rests
13  at this point.
14           THE COURT:  All right, then.  For the defendant.
15           MR. JUPITER:  Your Honor, I have no intent of calling
16  any witnesses.
17           THE COURT:  All right, then.  The court finds as
18  probable cause -- do you wish to argue?
19           MR. JUPITER:  Well, Your Honor, just very briefly, I
20  think the -- first is just a very technical objection.  Your
21  Honor, I've done some research on the elements the government
22  has to prove.  And every case that I've seen seems to say that
23  regardless of the fact that the stat- -- the plain language of
24  the statute says putting something in the mail, the case law
25  seems to suggest -- seems to say very clearly that an oral

1  threat conveyed with intent of someone seeing it is okay, but
2  just looking at the plain language of the statute, I have to
3  raise the objection that I don't think that putting something
4  on the Internet constitutes putting something in the mail.  I
5  think that the intent of the statute is directed towards
6  letters, written communications put in the mail.  That being
7  pushed aside -- and as an officer of the court, I would say the
8  -- every case has gone against me on that.
9       All right.  But, anyway, with regard to the -- the
10 government hasn't met probable cause with regard to trying to
11 show that this was a threat in the context I think the court --
12 the case law does say that the government has to show, and I
13 would suggest even for probable cause purposes, has to show
14 that this was a threat that was made in the context that it was
15 said, meant to disrupt the -- the functions of government.
16           And this testimony, in terms of what this video was
17 and what this writing was and in the context of what his Web
18 site is about is a religious -- some religious messages that,
19 whether you or I agree with them, had nothing to do with making
20 threats against the President.  It's about trying to -- his
21 intent in trying to get people to listen to him.
22           And based on this officer not even viewing a 7-minute
23 video, it has to be looked at in the whole context of the
24 video.  The government hasn't met that and the officer is going
25 to -- if the agent, the only agent testifies and says that this

```
 1    is on a series of 20 videos, and this video itself is seven
 2    minutes long, and doesn't -- is not really able to say in what
 3    context Mr. Christopher was making this statement, that I don't
 4    think it can constitute a threat, and the government has failed
 5    to reach -- to make out probable cause, and we would ask that
 6    the court dismiss the complaint at that -- on those -- on that
 7    basis.
 8              THE COURT:  I note that they did proffer the
 9    affidavit.  And if you want to --
10              MR. JUPITER:  Yes, Your Honor, but the affidavit is on
11    the same Web site that was referred to.
12              THE COURT:  I see.
13              MR. JUPITER:  And once again, it has -- it has to be
14    taken as a whole.  And from the *Adair* case and -- well, I will
15    cite *United States v. Mitchell*, 812 F.2d 1250.  That case was
16    overturned on other grounds, but that the -- the court has to
17    find that a threat must be determined in light of the entire
18    factual context of defendant's statement and that the trial
19    court may look at surrounding events, reaction of listeners and
20    whether words are expressly conditional.
21              So the government just has not with this type of
22    testimony and this type of affidavit shown what's the context
23    that these statements were made.  They're cutting and splicing.
24    This is a Web site where several things are posted, videos,
25    writings, and that are mainly being conveyed for the purposes
```

```
 1    of Mr. Christopher's religious views.
 2              THE COURT:  Okay.  Thank you very much.  The United
 3    States?
 4              MR. FULCHER:  Just very briefly, Your Honor.  I would
 5    note that there is not much -- with all due respect to
 6    Mr. Jupiter and his ability, I don't think there's much in the
 7    way of mincing of words when someone posts on the Internet,
 8    quote, "Yes, I've decided I will assassinate Barack Obama," and
 9    also has a countdown ticker saying, "Okay, we have six days
10    until my presidential assassination."
11              THE DEFENDANT:  It's all satire.
12              THE COURT:  Excuse me.  Excuse me.  Only speak through
13    your attorney.  That's the best thing.  All right.
14              MR. FULCHER:  Your Honor, I would also note, as set
15    forth in the affidavit, that the defendant here also stated,
16    "To those who still think I'm a nobody, who antagonized me, who
17    seek for my capture and arrest, I will have you found, arrested
18    and executed if you push me too far."
19              And I would also note that -- that Mr. Jupiter, with
20    his -- with regard to his argument concerning requirement of
21    the mailing, that that is not the case.  The statute does
22    provide not only for someone who mails a threat but also
23    someone who simply makes a threat.  So I believe that the
24    statute, as I understand, has been revised as recently as I
25    think 1994, but that some of the case law may have been under
```

```
 1   prior versions of that statute.
 2             THE DEFENDANT:  (Inaudible)
 3             THE COURT:  All right.
 4             THE DEFENDANT:  Five days before --
 5             THE COURT:  Okay.
 6             THE DEFENDANT:  -- you figure out who I am.
 7             THE COURT:  All right.
 8             THE DEFENDANT:  I am to return to Christ.
 9             THE COURT:  Okay.
10             THE DEFENDANT:  Five days, and then the shame is going
11   to cover you.
12             THE COURT:  Okay.
13             THE DEFENDANT:  The media, everybody is going to --
14             THE COURT:  All right.
15             THE DEFENDANT:  -- the Internet.  Everybody is going
16   to recognize --
17             THE COURT:  Thank you very much.  Mr. Christopher --
18             THE DEFENDANT:  -- that I am to return to Christ.
19             THE COURT:  All right.
20             THE DEFENDANT:  And the shame is just going to cover
21   you.
22             MR. FULCHER:  Nothing further from the government,
23   Your Honor.
24             THE COURT:  All right.  The court finds there's
25   probable cause to believe a crime was committed, that the
```

```
 1    defendant did commit that crime.  He is bound over for further
 2    action of the grand jury of the Southern District of
 3    Mississippi, and the court further finds there's no set of
 4    conditions the court could impose that would ensure he would
 5    not be both a flight risk and a danger to the community, so he
 6    is therefore ordered detained.
 7         Why don't y'all come up here just a second when we break
 8    and we'll talk about the motion by the United States and how we
 9    want to handle that.  Okay?
10              Thank you very much.
11              THE DEFENDANT:  Why do you want to try Jesus Christ?
12         (BRIEF RECESS)
13              THE COURT:  All right.  Court will come back to order.
14         (SHORT PAUSE)
15              THE COURT:  The motion is being made by the United
16    States at this time ore tenus, and the court will entertain it.
17              MR. FULCHER:  Thank you, Your Honor.  Comes now the
18    United States ore tenus and moves the court at this time
19    pursuant to 18 United States Code, Section -- Sections 4241,
20    4242 and --
21              MR. JUPITER:  I'm sorry, Your Honor.  I thought
22    something -- you have ordered him detained.  Correct?
23              THE COURT:  Yes, I have ordered him detained.  Yes.
24              MR. JUPITER:  Okay.  Thank you, Your Honor.
25              THE COURT:  Yes, I have.
```

```
 1              MR. FULCHER:  Okay.  Thank you.
 2              THE COURT:  Yeah.
 3              MR. FULCHER:  Thank you, Your Honor.  And pursuant to
 4   18 U.S.C. Section 4247(b) and (c), the government moves the
 5   court for an order committing the defendant to the custody and
 6   care of the Bureau of Prisons for purposes of a mental
 7   examination consistent with the statutes providing for such a
 8   -- an examination.
 9              THE COURT:  All right.  And from the defendant?
10              MR. JUPITER:  Your Honor, in light of the fact that
11   the court has ordered the defendant detained and the court has
12   noted the defendant's objection to probable cause in the
13   detention finding, but since the court has ordered him
14   detained, we do not oppose the government's motion.
15              THE COURT:  All right.  The court finds there's ample
16   reason to believe that the standard has been met and the court
17   orders that the defendant be -- undergo a mental examination
18   pursuant to the order that I just signed and entered in this
19   case.
20        All right.  Do you want a copy of it?  This is what it --
21   do you want to take a look at it, Omodare?
22              MR. JUPITER:  He sent a draft to me, Your Honor.
23              THE COURT:  Okay.  Just the standard --
24              MR. JUPITER:  I have --
25              THE COURT:  All right.  Thank you very much.  Court is
```

```
 1   in recess.
 2         (Hearing was concluded.)
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 3:09-cr-00012-HTW-JCS   Document 32   Filed 02/01/10   Page 16 of 17

```
 1                    CERTIFICATE OF TRANSCRIPTION
 2
 3         I, BRENDA WOLVERTON, Official Court Reporter, United
 4   States District Court, Southern District of
 5   Mississippi, do hereby certify that the above and foregoing
 6   pages contain a full, true and correct transcript of the
 7   proceedings had in the aforenamed case at the time and
 8   place indicated, which proceedings were recorded by the
 9   courtroom deputy clerk and later transcribed by me from a
10   digital recording to the best of my skill and ability.
11            I certify that the transcript fees and format
12   comply with those prescribed by the Court and Judicial
13   Conference of the United States.
14            This the 28th day of January, 2010.
15
16                           s/ Brenda Wolverton_____
                             U.S. DISTRICT COURT REPORTER
17
18
19
20
21
22
23
24
25
```